### GENERAL TIRE REPAIR CO. v. PRICE.

#### (Supreme Court, Appellate Term. March 5, 1909.)

1. EVIDENCE (§ 215*)—ADMISSIONS AGAINST INTEREST.

> In an action for the price of supplies and work in repairing defendant's automobile, pursuant to a contract made with defendant's chauffeur and ratified by defendant, letters written by plaintiff to defendant, stating that plaintiff had allowed the chauffeur a discount on the materials and the work, were admissible against plaintiff as admissions against interest, as showing a violation by him of Pen. Code, § 384r, making one giving a bonus to an agent guilty of a misdemeanor.
>
> [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 756; Dec. Dig. § 215.*]

2. CONTRACTS (§ 141*)—ILLEGALITY—EVIDENCE.

> In an action for the price of supplies and work in repairing defendant's automobile pursuant to a contract made with defendant's chauffeur, evidence *held* to show that plaintiff allowed the chauffeur a discount on the materials and work, in violation of Pen. Code, § 384r.
>
> [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 141.*]

3. CONTRACTS (§ 105*)—ILLEGALITY—VIOLATION OF STATUTE.

> Where plaintiff, who furnished supplies and work in repairing defendant's automobile pursuant to a contract on defendant's behalf with his chauffeur, paid to the chauffeur a discount in violation of Pen. Code, § 384r, he could not recover; the contract being void as against public policy.
>
> [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 477; Dec. Dig. § 105.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the General Tire Repair Company against Theodore H. Price. From a judgment for plaintiff, rendered in the Municipal Court after a trial by the court without a jury, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

Henry C. Quinby, for appellant.
Bernard J. Isecke, for respondent.

GILDERSLEEVE, P. J. The plaintiff sued the defendant for automobile supplies and work in repairing defendant's automobile. The contract was made on behalf of defendant by the latter's chauffeur. Defendant apparently received the benefit of the contract and ratified the acts of the chauffeur. The defendant introduced no evidence upon the trial, but relied upon two letters from the plaintiff and upon the provisions of section 384r of the Penal Code. The statute in question is as follows:

"An agent, employé or servant, who, being authorized to procure materials, supplies or other articles, either by purchase or contract, for his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly, for himself or for another, a commission, discount or bonus from the person who makes such sale or contract, or furnishes such materials, supplies or other articles, or from a person who renders such service or labor; and any person who gives or offers such an agent, em-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ploye'or servant such commission, discount or bonus shall be guilty of a misdemeanor, and shall be punished by a fine of not less than ten dollars nor more than five hundred dollars, or by such fine and by imprisonment for not more than one year."

After receiving the bill in suit defendant received from plaintiff the following letter:

"With reference to our conversation to-day concerning your account, would say that, regarding commissions paid your chauffeur, we have given him the benefit of a 5 per cent. discount, which was supposed to be for cash. We have also allowed him 5 per cent. on the repair work which was brought here, and we should be glad to do likewise by you. Your impression that we have allowed him a long discount is erroneous. The discount allowed us by the tire manufacturers does not permit our giving all the profits to chauffeurs. We are under quite an expense in maintaining our business, and we ask only what is fair; and surely our customers must expect to pay us a profit on what is purchased from us. For cash, over the counter, we can, and are only too glad to, handle the business on a closer margin. Such transactions allow us to turn the money over again, which naturally affords us means to handle the business on a much closer margin. In your case, however, the goods were charged to you, and some of the charges have been standing since February. We have to pay our bills on the 10th of each month, regardless whether our customers pay monthly, as we are supposed to do. Your account is way past due, and we cannot see why settlement should not be made at the regular price list, which have been charged you. Please send us your check by return mail."

To this letter defendant replied as follows:

"I beg to acknowledge the receipt of your letter of the 10th of June, in which you state that you paid my chauffeur commissions amounting to 5 per cent. discount on my bills and a further 5 per cent. on the repair work. Inasmuch as I find that I have paid you since the 21st of May, 1906, some $2,166.-64, upon which, presumably, upon your own statement, you have paid my chauffeur commissions amounting to $216.66, which commissions were illegally paid to him, and should have been paid to me, and inasmuch as you claim, further, that there is now due you from me the sum of $235.28, which, less the commission of 10 per cent. previously paid to my chauffeur, would leave me owing you $211.76, if, indeed, I owe you anything, I feel no little exasperation that, despite the fact that I paid my chauffeur a good salary and treated him with every consideration, you should have paid him discounts on bills paid by me, and I have instructed my counsel to thoroughly investigate the subject and ascertain whether I have any redress in the premises, and whether such practices cannot be stopped."

To this letter plaintiff replied:

"We beg to acknowledge receipt of your letter of the 12th, and we regret to say that your impression that we have paid your chauffeur a commission which was illegal is a wrong one. We have not, as your letter states, paid your chauffeur a discount on bills paid by you. We have never charged you any other than the regular price on tires, and this you can verify by comparing our charges against the tire manufacturers' list. The manufacturers permit us to allow a 5 per cent. discount from this list for cash. You have never paid us cash, and consequently you have not received the benefit of the 5 per cent. Your account has been a monthly one, and settlement was supposed to have been made the 1st of each month. Inasmuch as your bills have not been paid within the 10-day time limit, we fail to see where you could justly expect a deduction of 5 per cent. from your invoices. In order to live up to the tire manufacturers' terms and secure the 5 per cent. discount, we have been obliged to pay them for goods sold you out of our pocket, and then wait patiently for you to settle. The 5 per cent. discount rightfully belongs to us, and, if we saw fit to pay that amount to your chauffeur, we are the sufferers, and not you, as

your letter would indicate. We have tied up our money for several months, and we fail to see that you are entitled to the 5 per cent. discount. We ask only what is justly due us, and, as some of your account dates back as far as February, we would appreciate your check in settlement of the account."

On the trial the plaintiff's officers attempted to deny the giving of any such discount to the chauffeur; but the letters of the plaintiff, above quoted, clearly contain admissions against interest of the allowance of such discount. This evidence must be held to more than counterbalance the denial of plaintiff's officers at the trial, and the court below was not warranted in finding, as a matter of fact, that no such discount had been allowed.

In the case of Sirkin v. Fourteenth Street Store, 124 App. Div. 384, 108 N. Y. Supp. 831, the Appellate Division of this department held that a contract by which plaintiff sold goods to defendant through the latter's purchasing agent, the inducing cause for placing the order with plaintiff being plaintiff's agreement, unknown to the defendant, to pay the agent 5 per cent. of the purchase price of goods ordered by him, was either part of such agreement, the making of which was a misdemeanor under the Penal Code, and so void, or was tainted by such agreement, so that, on grounds of public policy, an action for the purchase price could not be maintained, and that public policy forbade the application of the rule of ratification to a contract of sale of goods by plaintiff to defendant through the latter's purchasing agent, induced by plaintiff's illegal agreement to pay the agent a commission on all orders he should place with plaintiff, though defendant had not rescinded the contract or counterclaimed for damages in the action by plaintiff against defendant for the purchase price. Applying this doctrine to the case at bar, we are of opinion that the judgment cannot stand.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.